UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60946-CIV-COHN/SNOW

STEPHEN COMBS,

    Plaintiff,

v.

TOWN OF DAVIE, a municipal
corporation, and MATTHEW DRAKE,

    Defendants.
_____/

**SCANNED**

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon a Motion for Summary Judgment filed by Defendants Town of Davie and Matthew Drake [DE 44]. The Court has considered the Motion for Summary Judgment, accompanying Memorandum of Law [DE 47], Defendants' Statement of Uncontested Facts [DE 48], Plaintiff's Response [DE 55] and accompanying Memorandum of Law [DE 56], Defendants' Reply [DE 77], and the various depositions and other evidence of record, and is otherwise duly advised in the premises.

### I. BACKGROUND

This case involves claims by Plaintiff Stephen Combs against Detective Matthew Drake and the Town of Davie for violations of his civil rights under 42 U.S.C. §1983 and negligence under Florida law. Detective Drake alleges that while off-duty, he observed Combs driving erratically and made the decision to pull him over. The following is a narrative of the events that transpired, according to Drake's sworn testimony at his

deposition.[1]

After pulling Combs over, Drake alleges that Combs got out of his car and stumbled to the ground, his speech slurred and his breath smelling of alcohol. Combs got more argumentative and aggressive with Drake as he was questioned, and eventually lunged at Drake, grabbed his shirt, and attempted to pull him to the ground. (Drake deposition, p. 24.) Drake pushed Combs away several times, but Combs attempted to hit him in the face with a closed fist and continued swinging at him. (Id. at 24-25.) They fought "for a few minutes," after which Drake handcuffed Combs with his hands in front of him. (Id. at 25.) However, even after being handcuffed, Combs continued to struggle, and was not fully subdued and secured until the other officers arrived (Id. at 26.)

Drake also provided some additional details surrounding the point at which Combs sustained his head injury. His account is summarized in Defendants' Statement of Uncontested Facts, which is worth quoting in its entirety:

> At some point during the altercation, Detective Drake brought Mr. Combs to the ground causing Mr. Combs to hit his head with the ground, at that time Detective Drake again called on the radio for an expedited response. Mr. Combs continued to swing his fists at Detective Drake when he was attempting to talk on the radio. While this was occurring Detective Drake had secured one of Mr. Combs' hands in a handcuff, however Mr. Combs had his other hand free and was swinging at the detective using his key ring as a

---

[1] In consideration of this Motion for Summary Judgment, the Court construes the facts in a light most favorable to the non-moving party, the Plaintff. However, as Detective Drake provides the only testimony regarding many of the events that transpired, and his credibility is at issue, it is useful to consider Drake's testimony regarding the altercation and arrest among the other evidence available.

make shift weapon.[2] While this is occurring during the struggle, Detective Drake struck Mr. Combs in the chest, shoulder and head with his radio. (Statement of Uncontested Facts, p. 2-3 [DE 48].) When asked about the physical location in which this altercation took place, Drake explained that Combs and his vehicle were within the edges of the driveway during the entire sequence of events.

Because Combs is incompetent to testify on his own behalf, Drake provides the only testimony regarding the events that transpired. However, Plaintiff has submitted a video from a security camera that documented at least part of the altercation.[3] The video shows the entire width of the driveway, looking out from the house towards the street, with a hedge to the right of the driveway and a mailbox to the left. Combs and Drake enter the video from the right side, Drake chasing Combs across the driveway. Drake then throws Combs to the ground next to a mailbox and punches him repeatedly. Combs makes no obvious movements after this point, and Drake appears to secure Combs' hands with handcuffs, then drags him by his arms across the driveway and back out of the field of vision of the camera, to the right and behind the hedge. Some

---

[2] In his deposition, Drake did testify that Combs attempted to use his key ring as a weapon. (Drake deposition, p. 36-37.) However, earlier in the same deposition, Drake testified that "he did not use anything as a weapon other than his hands and feet." (Drake deposition, p. 32, lines 5-6.)

[3] Defendants challenge Plaintiff's reliance on this video, arguing that the Court may not consider the video on this motion for summary judgment because it has not been properly authenticated. (Defendants' Reply, [DE 77].) However, the Court may consider any evidence that "is admissible or that could be presented in an admissible form." Denney v. City of Albany, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001). There is nothing inherently inadmissible about a video, it must simply be properly authenticated before it may be admitted as evidence in a trial. Even if that authentication has not been established on the record at this stage, the video is a home security video which can be easily be authenticated.

time period later, the video shows a marked police car arriving and an officer walking over in the direction in which Drake had dragged Combs. Other officers eventually arrive, as do the paramedics.

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon

the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  As long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249–50.

### III. EXCESSIVE FORCE CLAIM AGAINST DETECTIVE DRAKE

In Count II of the Complaint, Plaintiff Combs brings a claim under 42 U.S.C. §1983 for violations of his civil rights arising out of the altercation with Drake.  Combs alleges that Drake used excessive force in securing his arrest.  Defendant Drake moves for summary judgment on this claim, arguing that qualified immunity protects him from suit and that there is no genuine dispute of material fact as to the events that occurred. The Court considers each argument in turn.

#### A. Qualified Immunity

Defendant Drake argues in his Motion for Summary Judgment that qualified immunity negates any liability to Combs arising out of the altercation.  When conducting a qualified immunity analysis at the summary judgment stage, a court "must take the facts in the light most favorable to the party asserting the injury."  Robinson v.

Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (citing Saucier, 533 U.S. at 201). The court thereby eliminates disputed issues of fact and takes the Plaintiff's best case. The Supreme Court in Saucier emphasized that a court must address the elements of qualified immunity in the proper sequence. First, a court must determine whether officers violated a constitutional right. If they did not, then the court's inquiry ends and the officers are entitled to qualified immunity. See Saucier, 533 U.S. at 201.

If there was a violation of a constitutional right, then the court must determine if the right was clearly established. "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Court's inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

Accordingly, in order to determine whether officers violated clearly established rights, courts must determine "whether the state of the law . . . gave [the officers] fair warning that their alleged treatment . . . was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002). "The applicable law is clearly established if the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (alteration and internal quotes omitted). "It must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004).

The Court of Appeals for the Eleventh Circuit has provided three general means

by which a court can determine whether § 1983 defendants had "fair warning." First, courts can "look to see whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law." Id. at 1250 n.6; see, e.g., Evans, 407 F.3d at 1283 (holding that "degrading and forceful manner of . . . strip search" could not have been considered reasonable under Fourth Amendment by any objectively reasonable police officer). In such circumstances, the constitutional or statutory violation must be so obvious that prior caselaw is unnecessary. See Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

"Second, if the conduct is not bad enough that it violates a constitutional provision on its face, [courts] look to case law that can be applied broadly to a number of factual situations." Kesinger, 381 F.3d at 1250 n.6. "[B]roader, clearly established principle[s]" may "control the novel facts" in a particular situation. See Mercado, 407 F.3d at 1159 (citing Hope, 536 U.S. at 741). "These principles may give notice to officers, provided that the decisions clearly apply to the situation at hand. The 'reasoning, though not the holding' of prior cases can also send 'the same message to reasonable officers' in novel factual situations." Id. (quoting Hope, 536 U.S. at 743).

"Third, and finally, if no broad case law is applicable, [courts] turn to case law precedent that is tied to the facts." Kesinger, 381 F.3d at 1250 n.6. "Any case law that is 'materially similar' to the facts in the case at hand must pre-date the officer's alleged improper conduct and 'truly compel the conclusion that the plaintiff had a right under federal law.'" Mercado, 407 F.3d at 1159 (quoting Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)). In the Eleventh Circuit, courts must confine their case law

search to cases from the Supreme Court of the United States, the U.S. Court of Appeals for the Eleventh Circuit, and the relevant state supreme court. Marsh v. Butler County, Ala., 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc).

The Supreme Court recently endorsed a two-step approach for determining whether a right was clearly established. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam). The Court noted that there may be cases where violations are "obvious" under constitutional standards and the generalities of caselaw. In such circumstances, specific caselaw is not required. Id. The Court suggested, though, that such cases are atypical, stating that the situation it was addressing—shooting a suspect while he was fleeing in a vehicle in a potentially dangerous manner—was "far from the obvious" case where excessive force standards govern. Id. Without an obvious fit, courts must focus on caselaw in a more "particularized" sense. Id. (internal quotes omitted). Although the Brosseau decision does not alter the Eleventh Circuit's three-step approach above, it suggests that the first two steps have a limited application.

The legal standard for evaluating a claim of excessive force is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). In determining whether the force used was reasonable in a given case, courts consider the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The force used must be reasonably proportionate to the need for that force. Id. at 397. Thus, one can conclude that at the

8

time of this incident, the law was clearly established that an officer may not use a level of force that is disproportionate to the force being used against him. Taking the facts in a light most favorable to the non-moving party, the Court looks to the video, which shows Combs exerting no force whatsoever against Drake, but rather running away from Drake. Even if other events occurred outside the range of the video camera prior to those events depicted in the video, the video still shows the immediate moments leading up to Drake's restraining and beating of Combs, and shows no immediate need for the force that Drake exerted. The Court cannot conclude that a reasonable officer in Drake's position would have deemed it necessary to use the level of force that was used, under these circumstances. Further, the record establishes that at the time of the arrest, Drake suspected Combs of driving under the influence, a nonviolent crime. Taking these facts together, and reading the record in the light most favorable to the Plaintiff, the Court concludes that Drake violated a clearly established right when he beat, restrained, and dragged a suspect who posed no immediate threat to his personal safety and was actually attempting to run away from him. Accordingly, qualified immunity does not apply.

### B. Genuine Dispute of Material Fact

Defendant Drake next argues that there is no genuine dispute of material fact as to the events that transpired, and so summary judgment is proper. Drake relies largely on the fact that Combs is unable to provide an alternative account of what occurred, so Drake's account remains the only one on the record. However, this argument does not consider the presence of the video, which does provide another version of events that the Court must consider.

Drake objects strongly to any reliance by the Court on this video, arguing that a portion of the altercation was not captured on the video. The Court recognizes that the video does not tell the whole story; indeed, the altercation was already underway at the point when Combs and Drake first appear in the video. Drake further argues that Plaintiff may not simply respond to its properly supported motion for summary judgment by making "broad, conclusory attacks on the credibility of a witness," here, Drake. The Court agrees; a plaintiff may not avoid summary judgment simply by making general attacks on the honesty or veracity of a witness' testimony. See Crawford-El v. Britton, 523 U.S. 574, 600 (1998); McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999).

However, Plaintiff's arguments in response to this motion for summary judgment, and their support in the record evidence and the video, are of a very different nature. Plaintiff does not simply make "broad, conclusory attacks" on the credibility of Drake's testimony; he provides a video that documents at least part of the altercation and that seriously calls into question Drake's credibility. The Court has carefully reviewed Drake's testimony and can find no consistency with the events depicted in the video. While there are certainly events that took place that are not shown in the video, one would expect Drake's purportedly comprehensive recitation of the events to include those depicted on the video, and it simply does not. According to Drake, Combs was swinging his fists and kicking at him throughout the entire altercation. The video does not show a single swing of the fist or kick from Combs. Drake never mentions chasing Combs as he ran away, but this scene is shown quite clearly on the video. Similarly, Drake testified that Combs continued to kick and struggle even after being secured in

handcuffs, but the video shows Combs' limp body being dragged across the driveway after he was secured with no apparent struggle. At best, the video persuades the Court that Drake is has not told the whole story in his testimony; at worst, the Court has serious concerns that Drake has perjured himself. In sum, this evidence goes far beyond mere "broad, conclusory attacks" on Drake's credibility, and establishes a genuine dispute of material fact that precludes summary judgment.

## IV. CLAIMS AGAINST THE TOWN OF DAVIE

Defendants also move for summary judgment as to the claims for negligence and violation of civil rights against the Town of Davie. Defendants' Motion rests on a single argument: Detective Drake did not violate the Plaintiff's constitutional rights and is not liable for harm caused to the Plaintiff, and so the Town of Davie may not be held liable. However, as discussed above, there is a genuine dispute of material fact as to Drake's liability. Accordingly, this argument fails. As Defendants have raised no other grounds for granting summary judgment in favor of the Town of Davie, and the burden falls on the moving party to show any absence of a genuine issue of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the Court concludes that summary judgment in favor of the Town is precluded by the numerous genuine disputes of material fact in the record as to Detective Drake's liability.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 44] is **DENIED**.

[DE 44] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 20th day of March, 2007.

_____
**JAMES I. COHN**
**United States District Judge**

Copies provided to:

Counsel of record